## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ZENERGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-0381-CVE-FHM |
| | ) | |
| WILLIAM L. COLEMAN and | ) | |
| ZAVANNA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court are Defendant Zavanna, LLC's Motion to Dismiss and Brief in Support (Dkt. # 10) and Defendant William L. Coleman's Motion to Dismiss and Brief in Support (Dkt. # 21). Defendant Zavanna, LLC (Zavanna) and defendant William L. Coleman (Coleman) each ask the Court to dismiss plaintiff Zenergy, Inc.'s (Zenergy) defamation claims pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). Defendants argue that the Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000, that the Court lacks personal jurisdiction over each defendant, and that Zenergy cannot state claims for defamation because defendants are entitled to a qualified privilege.[1] Zenergy responds that it has adequately alleged the required amount in controversy, that defendants' contacts with Oklahoma are sufficient to establish both general and specific jurisdiction, and that defendants are not entitled to qualified privilege, or alternatively, that the issue cannot be resolved on a motion to dismiss.

---

[1] In his reply in support of his motion to dismiss (Dkt. # 28), Coleman concedes that "if this Court possesses personal jurisdiction over [Zavanna], it would also possess jurisdiction over Mr. Coleman in his role as President." Dkt. # 28, at 1. Therefore, Coleman has abandoned his argument that the fiduciary shield doctrine precludes this Court's exercise of personal jurisdiction over him. See Dkt. # 21, at 2-3.

## I.

This case is one of several disputes arising out of an oil and gas development project in North Dakota.[2]  Zenergy is an Oklahoma company, Dkt. 2, at 1, that operates oil and gas wells.  Zavanna is a Colorado limited liability company.  Dkt. # 10, at 9.  Coleman is the president of Zavanna.  Dkt. # 21, at 3.  Zenergy and Zavanna are both involved in the North Dakota project.

On or about June 5, 2009, Coleman, as president of Zavanna, sent an allegedly defamatory letter (the Letter) addressed to Richard Siegal of Palace Exploration Co., Mr. Dave Wilson of RoDa Drilling Company, and Mr. Robert Zinke of Zenergy, Inc. and Zeneco, Inc.  Mr. Lewis B. Greenblatt of Reed Smith LLP, Mrs. Roland Arnall of RoDa Drilling Company, Mr. Stephen Rothman, Mr. Fran Weisser, Mr. Peter Bjork, and Ms. Carol Slinkard were copied.  Dkt. # 2, at 4-7.  The Letter is critical of Zenergy's conduct in managing wells associated with the North Dakota project.  See id.  Zenergy filed a complaint (Dkt. # 2), asserting defamation claims against Coleman and Zavanna.  Zenergy also asserted a negligence claim against Coleman, which was voluntarily dismissed on September 10, 2009.  Dkt. # 24.

## II.

In considering a motion to dismiss pursuant to Rule 12(b)(1), a court must determine whether it has subject matter jurisdiction over the parties' claims.  Rule 12(b)(1) motions are either facial or factual attacks on the sufficiency of the complaint:

> Under a facial attack, the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true. In a factual attack . . . however, the movant goes beyond the allegations in the complaint

---

[2]     Background information about the parties' relationship and the North Dakota project can be found in this Court's Opinion and Order dated June 26, 2009 in RoDa Drilling Co. v. Zavanna, LLC, Case No. 08-cv-684-CVE-FHM, 2009 WL 1925701.

and challenges the facts upon which subject matter jurisdiction depends.  In such a situation, the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1).

Paper, Allied-Industrial, Chemical And Energy Workers Int'l Union v. Cont'l Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005) (citations omitted).  A court need not convert a 12(b)(1) motion to one for summary judgment when considering matters outside the pleadings.  Holt v. U.S., 46 F.3d 1000, 1003 (10th Cir. 1995).  However, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."  Id.  The jurisdictional question is intertwined with the merits when subject matter jurisdiction is dependent on the same statute as the substantive claim.  Id.

In considering a motion to dismiss pursuant to Rule 12(b)(2), a court must determine whether the plaintiff has alleged sufficient facts to establish the Court's personal jurisdiction over the defendants.  If the district court does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction.  Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1065 (10th Cir. 2007).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  In making this determination, the court resolves all factual disputes in favor of the plaintiff.  Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995).

3

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss a complaint for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555 (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. When deciding whether to grant a motion to dismiss, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). Nonetheless, a court need not accept as true those allegations which are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). In sum, the claimant must allege facts sufficient to state a claim for relief that is plausible on its face. Twombly, 550 U.S. at 570.

# III.

A.     <u>Amount in Controversy</u>

Defendants argue that the Court does not have subject matter jurisdiction over Zenergy's claims because the amount in controversy does not exceed $75,000.  Zenergy invokes diversity jurisdiction, which requires complete diversity of parties and an amount in controversy over $75,000.  <u>See</u> 28 U.S.C. § 1332.  Zenergy's complaint alleges that the action is between citizens of different states, and that the amount in controversy exceeds $75,000.  Dkt. # 2, at 1.  Defendants therefore make a factual, rather than facial, attack on jurisdiction.  <u>See</u> <u>Paper Workers</u>, 428 F.3d at 1292.  Defendants argue that Zenergy has no legal or factual basis upon which to assert damages exceeding $75,000 because Zenergy has not identified particular business it lost as a result of the Letter, and "Zenergy's supposed future damages from the letter cannot satisfy the amount in controversy requirement."  Dkt. # 10, at 18-19.  Zenergy argues that the value of its business and reputation interests at stake exceeds $75,000, and that it does not appear to a legal certainty that its claims are for less than $75,000.  Dkt. # 18, at 29-31.

The party invoking federal jurisdiction bears the burden of proving the facts necessary to establish such jurisdiction.  <u>See</u> <u>McNutt v. Gen. Motors Acceptance Corp. of Ind.</u>, 298 U.S. 178, 182, 189 (1936).  If the plaintiff claims an amount that satisfies the amount in controversy requirement, that sum controls "if apparently made in good faith."  <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288 (1938).  A claim is not made in good faith if it is apparent, to a legal

certainty, that the plaintiff cannot recover the amount claimed."[3]  Id. at 289; see Watson v. Blankinship, 20 F.3d 383, 388 (10th Cir. 1994) (determining that appellees had a good faith belief that they were entitled to punitive damages because "it could not be proven to a legal certainty that they were not entitled to them"); Emland Builders, Inc. v. Shea, 359 F.2d 927, 930 (10th Cir. 1966) ("lack of good faith in making the jurisdictional allegations can exist when from the 'proofs' a court is satisfied to a legal certainty that the plaintiff never was entitled to recover the jurisdictional amount").  "The legal certainty standard is very strict," and dismissal under the standard is generally "warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction."  Woodmen of World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1216 -17 (10th Cir. 2003).  The plaintiff's eventual recovery of an amount less than the amount in controversy or defendant's assertion of a valid defense does not show bad faith or defeat a federal court's jurisdiction.  St. Paul, 303 U.S. at 290.

Defendants do not argue that there is a contractual limit to recovery in this case, nor do they suggest "an obvious abuse of federal court jurisdiction."  Woodmen, 342 F.3d at 1217.  Therefore, the Court must determine whether the applicable law limits the amount recoverable, id., or whether it is otherwise clear that Zenergy could not recover more than $75,000 from defendants in this case. The parties disagree as to what law applies to Zenergy's defamation claims.  Zenergy assumes that Oklahoma law applies, Dkt. # 18, at 25, while defendants argue that Colorado law may apply, Dkt.

---

[3]      There are other circumstances under which an amount in controversy may not be claimed in good faith.  See Emland Builders, Inc. v. Shea, 359 F.2d 927, 930 (10th Cir. 1966) (noting potential for "other circumstances," but not listing any).  However, defendants have not argued that any such circumstances exist in this case.  Cf., e.g., Carlisle v. Matson Lumber Co., 186 Fed. App'x 219, 223 (3rd Cir. 2006) (unpublished) (finding bad faith where plaintiff aggregated non-justiciable claims in order to meet amount in controversy requirement).

# 10, at 13.  The Court need not resolve the choice of law issue at this time, because the result under either is the same.

Zenergy does not allege the particular ways in which it was damaged by the Letter, but generally asserts that it has been injured, and is entitled to damages in excess of $ 75,000.  Dkt. # 2, at 2-3.  Under Oklahoma law, a defamation plaintiff may recover actual damages for out-of-pocket loss, "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering."  <u>Martin v. Griffin Television, Inc.</u>, 549 P.2d 85, 93 (Okla. 1976). Words which "prejudicially impugn a person's skill, knowledge, or conduct in his (or her) business" are actionable on their face and do not require a plaintiff to plead special damages.  <u>Gaylord Entm't Co. v. Thompson</u>, 958 P.2d 128, 147 (Okla. 1998).  Under Colorado law, a plaintiff is entitled to general damages "as a matter of course" when words are actionable *per se*.  <u>Kendall v. Lively</u>, 31 P.2d 343,  344 (Colo. 1934).  Imputation of "a matter incompatible with the individual's business, trade, profession, or office" is defamatory *per se*.  <u>Gordon v. Boyles</u>, 99 P.3d 75, 79 (Colo. Ct. App. 2004).  Zenergy alleges that the Letter "tends to deprive Zenergy of public confidence and to injure Zenergy in its occupation and business" and "tends to  . . . deter third persons from associating with or dealing with Zenergy."  Dkt. # 2, at 2.  Zenergy states claims for libel *per se* and, if successful, would be entitled to general damages under Oklahoma or Colorado law.  These damages would not necessarily be less than $75,000.

Defendants essentially argue that Zenergy cannot meet the amount in controversy requirement because it has not actually been damaged.  <u>See</u> Dkt. # 10 at 18-19.  The Court will not determine whether a plaintiff *in fact* suffered damages when ruling on a 12(b)(1) motion.  To do so

would convert a ruling on a 12(b)(1) motion to a ruling on the merits.[4]  See Gibson v. Jeffers, 478 F.2d 216, 220-21 (10th Cir. 1973) ("[w]hen dismissal for lack of jurisdictional amount also constitutes a decision on the merits, the court should be even more reluctant to dismiss the case"). At this stage, the Court must determine only whether "it could . . . be proven to a legal certainty," St. Paul, 303 U.S. at 289, that Zenergy is not entitled to more than $75,000 in damages.  In other words, this Court must determine whether Zenergy's damages, if proven, could exceed $75,000. Zenergy asserts that its overhead and marketing fees from the well operations allegedly imperiled by the Letter exceed $75,000 per year.  See Dkt. # 18, at 43.  This alone is sufficient to satisfy plaintiff's burden of proof on the amount in controversy.  Further, Zenergy potentially may recover damages for loss of reputation that could exceed $75,000.

B.    Personal Jurisdiction

Next, defendants argue that the Court cannot exercise personal jurisdiction over them.[5]  They argue that their contacts with Oklahoma are insufficient to meet the requirements of general or specific jurisdiction, and that traditional notions of fair play and substantial justice preclude the Court from exercising personal jurisdiction.  Zenergy responds that defendants have continuous and

---

[4]    A determination that the amount in controversy requirement was not met because plaintiff had not actually suffered the damages alleged would contravene the Supreme Court's statement that the "inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or [deprive the court of jurisdiction]." St. Paul, 303 U.S. at 289.  At the Rule 12(b)(1) stage, courts are concerned with the *potential* for recovery, not the eventual actual recovery; otherwise, federal courts would not have jurisdiction over many diversity actions in which the plaintiff loses.

[5]    Coleman initially argued that the Court should assess personal jurisdiction over him separately from its jurisdiction over Zavanna, pursuant to the fiduciary shield doctrine. Dkt. # 21, at 2-3.  However, Coleman now "concedes that, if this Court possesses personal jurisdiction over Defendant Zavanna, LLC, it would also possess jurisdiction over Mr. Coleman in his role as President." Dkt. # 28, at 1.

8

systematic ties to Oklahoma, and that they have specifically directed activities relating to this dispute at Oklahoma.

"To obtain personal jurisdiction over a non-resident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." Far West, 46 F.3d at 1074.  Oklahoma's long-arm statute permits  jurisdiction on any basis consistent with the U.S. Constitution. OKLA. STAT. tit. 12, § 2004(F); U.S. v. Botefuhr, 309 F.3d 1263, 1271 (10th Cir. 2002).  Therefore, "this two-part inquiry collapses into a single due process analysis." Rambo v. Amer. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988).

"A federal court sitting in diversity 'may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state.'" World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  These minimum contacts must be such that maintenance of the suit in the forum state "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe, 326 U.S. at 316.  "The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'"  Rambo, 839 F.2d at 1417 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  A court may exercise either general or specific jurisdiction over a defendant.

> Jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum state is "specific jurisdiction."  In contrast, when the suit does not arise from or relate to the defendant's contacts with the forum and jurisdiction is based on the defendant's presence or accumulated contacts with the forum, the court exercises "general jurisdiction."

Id. at 1418.  In this case, Zenergy argues that the Court may exercise both general and specific jurisdiction over defendants.  Defendants argue that Zenergy can prove neither.[6]

The Court will address specific jurisdiction first.  The specific jurisdiction inquiry has two parts.  First, the court must determine whether the defendant has sufficient minimum contacts with the forum.  OMI, 149 F.3d at 1091.   The court looks to "whether the defendant purposefully directed its activities at residents of the forum," and whether there is a nexus between the plaintiff's claim and those contacts. Id.  Second,

> if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'  This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case.

Id.

1.      Minimum Contacts

The first step of the minimum contacts analysis is to determine whether the defendants purposefully directed their activities at residents of the forum. See Burger King, 471 U.S. at 472; see also Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984).  The defendants' conduct must be

---

[6]      "Each defendant's contacts with the forum must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984).  Coleman is the president of Zavanna, Dkt. # 28, at 1, and personally performed many of the acts upon which Zenergy bases its argument for jurisdiction over Zavanna.  Coleman authored the Letter on behalf of Zavanna.  See Dkt. # 2, at 6.  Further, Coleman no longer asks this Court to assess personal jurisdiction over him separately from its jurisdiction over Zavanna.  Dkt. # 28, at 1.  Therefore, the Court will consider the defendants' personal jurisdiction arguments jointly. See Chalfant v. Tubb, 453 F. Supp. 2d 1308, 1315 n.4 (N.D. Okla. 2006) (assessing personal jurisdiction over defendant corporation and its owner jointly).

such that they "should reasonably anticipate being haled into court" in Oklahoma. <u>Burger King</u>, 471 U.S. at 474.

Defendants argue that their connections with Oklahoma are insufficient to establish minimum contacts. They admit making "business communications, including the [Letter]" with Zenergy, but argue that these "mere phone calls, e-mails and faxes" do not establish minimum contacts. Dkt. # 10, at 10. Defendants respond with several pages of "facts establishing personal jurisdiction," supported by affidavit. Dkt. # 18. Defendants allege that Zavanna has engaged in a continuing course of business with Zenergy, an Oklahoma resident. Dkt. # 18, at 35. Zavanna negotiated and executed a purchase participation agreement in Oklahoma, <u>id.</u>, and entered into several related agreements with Zenergy's predecessors, all Oklahoma residents. <u>Id.</u> at 35-36. Zenergy and Zavanna entered into an agreement that Zenergy would operate, on Zavanna's behalf, certain wells developed under participation agreements. <u>Id.</u> at 36. Zavanna representatives have attended meetings in Oklahoma relating to these participation agreements,[7] and have made "numerous other meetings or office visits" in Oklahoma. <u>Id.</u> at 37. Coleman attended at least some of these meetings in Oklahoma. <u>Id.</u> Zavanna has sent hundreds of e-mails and made hundreds of telephone calls to Zenergy's Oklahoma offices over the course of their relationship. <u>Id.</u> Zavanna (through Coleman) addressed the Letter to recipients in Oklahoma, New York, and Texas. Dkt. # 2, at 4. Defendants do not contest these factual allegations, and the Court takes them as true for the purposes of defendants' 12(b)(2) motion. <u>Rambo</u>, 839 F.2d at 1417.

---

[7]     The number of meetings Zavanna attended in Oklahoma is unclear. Zenergy asserts that "sixteen periodic operational meetings have occurred in Oklahoma," and that "Zavanna representatives have attended meetings in Tulsa." Dkt. # 18, at 11. Zenergy does not state how many of these sixteen meetings Zavanna attended.

The question is whether these contacts "represent an effort by the defendant[s] to 'purposefully avail' [themselves] of the privilege of conducting activities within'" Oklahoma. Id. at 1419 (quoting Hanson, 357 U.S. at 253). The contacts listed above show that Zavanna entered into a significant and enduring business relationship with an Oklahoma company. Defendants entered into a contract for services with an Oklahoma company. This is evidence that defendants purposefully availed themselves of the privilege of conducting activities in Oklahoma. See Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270, 1277 (10th Cir. 2005) ("[b]y procuring . . . services from Pro Axess, which operates its business in Utah," defendant purposefully availed itself of the opportunity to conduct activities within Utah). Further, although "[i]t is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts," Far West, 46 F.3d at 1077, the volume of correspondence between Zenergy and Zavanna demonstrates the significance of the relationship between the two, and is additional evidence of minimum contacts. See Benton v. Cameco Corp., 375 F.3d 1070, 1077 (10th Cir. 2004) ("the correspondence exchanged between [Coloradan plaintiff and Canadian defendant]" provided additional support for a finding of minimum contacts). Further, Zavanna representatives, including Coleman, traveled to Oklahoma to attend business meetings with Zenergy.   In Benton, the Tenth Circuit found that sending business representatives to the plaintiff's offices Colorado "represents an additional instance in which [defendant] purposefully and knowingly availed itself of a business opportunity in Colorado." Id.; see also Burger King, 471 U.S. at 476 ("territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there"); Chalfant v. Tubb, 453 F. Supp. 2d 1308, 1316 (N.D. Okla. 2006) (finding that company president's two trips to forum to discuss business relationship supported

12

exercise of personal jurisdiction).  Zavanna traveled to Oklahoma on several occasions to further

its business relationship with Zenergy.  These visits support a finding that Zavanna and Coleman

purposefully availed themselves of a business opportunity in Oklahoma.

The fact that the object of the parties' business venture is located in North Dakota does not

mean that defendants do not have minimum contacts with Oklahoma.  This case is distinguishable

from Far West.  In that case, the Tenth Circuit found that the plaintiff, a Utah resident who leased

land in Nevada from a Nevada lessor and Oregon sublessee could not show a Utah court's personal

jurisdiction over the Nevada and Oregon defendants.  46 F.3d 1071.  The court found it significant

that "the transaction was governed by Nevada law and was designed to build a power plant in

Nevada."  Id. at 1077.  The facts are somewhat similar here, because the parties' business venture

related to wells in North Dakota.  However, the parties relationship in this case is more extensive,

both in scope and duration, than the parties' relationship in Far West.  In that case, the parties

entered into a single lease, rather than a series of agreements.  Further, the defendants had not

traveled to Utah to negotiate or execute documents.  The Tenth Circuit has upheld findings of

minimum contacts upon relationships less extensive than the one between Zavanna and Zenergy.

See OMI, 149 F.3d at 1092 (finding that a Canadian corporation's issuance of insurance policy

agreeing to defend claims against Iowa plaintiff in any U.S. forum was sufficient contact with

Kansas to constitute purposeful availment).

The Letter itself provides further provides further support for the Court's exercise of personal

jurisdiction.  Although the allegation of an intentional tort does not *per se* create personal

jurisdiction in the plaintiff's home forum, the Letter is an additional contact with the forum.  See Far

West, 46 F.3d at 1077-80 (discussing how allegations of intentional torts affect the personal

jurisdiction analysis).  In Calder, the Supreme Court held that Florida defendants' publication of an allegedly libelous story about a California plaintiff was sufficient, by itself, to establish minimum contacts with California.  465 U.S. 783.  The Supreme Court reasoned that jurisdiction was proper "based on the 'effects' of their Florida conduct in California."   Defendants could reasonably anticipate being haled into court in California because "they knew that the brunt of [the injury caused by their article] would be felt by respondent in the State in which she lives and works . . . ." Id. at 789-90.  The reasoning of Calder, though not controlling, is relevant in this case.  Although the Letter was sent to third parties outside Oklahoma, Coleman and Zavanna could reasonably foresee that Zenergy would feel the effects of the Letter within Oklahoma, because that is where Zavanna is based.  The District of Columbia Circuit reached a similar result in a factually analogous case.  In Crane v. New York Zoological Society, a District of Columbia resident brought a libel action against a New York resident.  894 F.2d 454 (D.C. Cir. 1990).  The defendant sent an allegedly defamatory letter to the president of the Belize Audubon Society, regarding a potential business venture between the plaintiff and the Society in Belize.  Id. at 456.  The court found that the plaintiff had established a *prima facie* case for personal jurisdiction in the District of Columbia because "economic loss resulting from defamation is most likely to be felt in one's place of business whatever the locus of its publication."  Id. at 458.  The court was not concerned that the alleged defamation related to a business opportunity that was located outside the forum.  Zenergy's case is similar to Calder and Crane, in that the effects of the alleged defamation could foreseeably be felt in the plaintiff's home state.  But cf. Marten v. Godwin, 499 F.3d 290, 298 (3rd. Cir. 2007) (finding no personal jurisdiction in a defamation action because, even if the plaintiff felt the brunt of the harm in Pennsylvania, plaintiff "failed to allege any specific facts showing a deliberate targeting of

14

Pennsylvania"). Taken together, the defendants' entrance into a continuing and extensive business relationship with Zenergy, their continuing correspondence with Zenergy, their repeated travel to Oklahoma to meet with Zenergy, and their alleged defamation of Zenergy establish minimum contacts with Oklahoma.

In order for these contacts to support specific jurisdiction, there must be a nexus between these contacts and Zenergy's claims. See Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 109 (1987). The Letter relates to the business relationship between defendants and Zenergy; it purports to describe Zenergy's conduct in that relationship. However, Defendants argue that "the only real connection between this lawsuit and [Oklahoma] is the happenstance of Zenergy's domicile in Oklahoma," Dkt. # 10, at 11. It is true that the "happenstance" of unilateral action by the plaintiff or mere fortuity cannot support specific jurisdiction. Courts have found no nexus between the defendants' contacts with the forum and the litigation where the plaintiff moved to the forum state after the relationship began, e.g., Kulko v. Cal. Super. Ct., 436 U.S. 84, 98 (1978); Rambo, 839 F.2d at 1420, or brought the defendant's product into the forum state, Asahi, 480 U.S. 102; World-Wide Volkswagen, 444 U.S. 286; cf. Bell Helicopter Textron, Inc. v. Heliquest Int'l, Ltd., 385 F.3d 1291, 1296-97 (10th Cir. 2004) (lessee brought lessor's product into the forum state). However, in contrast to these cases, here defendants entered into a continuing relationship with an Oklahoma company and did business with that company *in Oklahoma*. They should not be surprised that Zenergy seeks to vindicate its claims in Oklahoma. Defendants' voluntary actions created a connection with Oklahoma. This is sufficient to create minimum contacts. See Burger King, 471 U.S. at 475-76 (where defendant "has created 'continuing obligations' between himself and residents of the forum, . . . he manifestly has availed himself of the privilege of conducting business there, and

because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well").

2.      Reasonableness

Because the Court finds that defendants have sufficient minimum contacts with Oklahoma to support specific jurisdiction, it must now determine whether the exercise of that jurisdiction would be reasonable under the circumstances.  Int'l Shoe, 326 U.S. at 316.  In making this determination, courts consider:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  The strength of these factors sometimes serves to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.  Conversely, the factors may be so weak that even though minimum contacts are present, subjecting the defendant to jurisdiction in that forum would offend due process.

OMI, 149 F.3d at 1095 (citations omitted).

i.      Burden on defendants of litigating in Oklahoma

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction."  Id.  This factor weighs heavily against the reasonableness of personal jurisdiction when the defendant is from a foreign country, which is not the case here.  See, e.g., id.  Defendants argue that the burden on them of litigating in Oklahoma would be significant because Zavanna's primary place of business is Colorado, and all of its employees, including Coleman, reside in Colorado.  Dkt. # 10, at 12. However, Coleman and other Zavanna representatives have traveled to Oklahoma on several

occasions to do business with Zenergy.  Dkt. # 18, at 11.  Therefore, the Court is not convinced that defendants would be significantly burdened by having to travel to Oklahoma.[8]  See Pro Axess, 428 F.3d at 1280 (finding this factor did not favor a French defendant forced to litigate in Utah because its representatives demonstrated their ability to travel to the U.S. by traveling to Utah to do business with the plaintiff).  Defendants also argue that they would be burdened by being forced to litigate this dispute in a forum unfamiliar with the applicable law.  See OMI, 149 F.3d at 1096.  Defendants argue that "Colorado law may apply to this matter."  Dkt. # 10, at 13 n.4.  Even if Colorado law were to apply, this consideration would not weigh in defendants' favor.  The law of another state is generally not as difficult to apply for a district court as that of another country.  Cf. Benton v. Cameco Corp., 375 F.3d 1070, 1079 (finding this factor weighed in favor of defendant where Colorado court would have to apply Canadian law); OMI, 149 F.3d at 1096 (finding this factor weighed in favor of defendant where Kansas district court would have to apply Canadian law).  This Court is well-equipped to apply Colorado law, and has done so in the past.  See, e.g., Williams Field Svcs. Gp., LLC v. Gen. Elec. Int'l, Inc., No. 06-CV-530, 2009 WL 151723 (N.D. Okla. Jan. 22, 2009).  Further, Colorado and Oklahoma defamation laws are similar.  See part III.A., supra.  This factor does not weigh in defendants' favor.

---

[8]       Further, Zavanna is currently involved in another case in the Northern District of Oklahoma.  RoDa Drilling Co. v. Zavanna, LLC, Case No. 4:08-cv-0684-CVE-FHM.  Zavanna asserted a lack of personal jurisdiction in its Answer to Plaintiff's First Amended Complaint and Counter Claims and Cross Claims (RoDa, Dkt. # 112).  However, Zavanna has not filed a motion to dismiss for lack of personal jurisdiction in that case.  See RoDa Docket Report.  Zavanna has filed a motion for summary judgment, which included a request for summary judgment on a claim against it.  RoDa, Dkt. # 138.  This Court does not find that Zavanna has waived personal jurisdiction.  However, the fact that Zavanna is currently involved in another case in this district, in which it has not moved to dismiss for lack of personal jurisdiction, suggests that the burden on defendants of litigating in the Northern District of Oklahoma is not significant.

ii.    Forum state's interest in resolving the dispute

"The second factor in our reasonableness inquiry examines the forum state's interest in adjudicating the dispute." OMI, 149 F.3d at 1096. A "State frequently will have a 'manifest interest in providing effective means of redress for its residents.'" Burger King, 471 U.S. at 483 (quoting McGee v. Int'l life Ins. Co., 355 U.S. 220, 223 (1957)). Zenergy is an Oklahoma resident, and Oklahoma has an interest in providing redress for torts committed against its residents. Defendants' argument that "Oklahoma does not have an interest in determining whether Zenergy, as an oil and gas operator, properly operated oil and gas wells in North Dakota," Dkt. # 10, at 13, is unconvincing. The fact that out-of-state activities are relevant to Zenergy's defamation claims does not deprive Oklahoma of its interest in providing redress for those claims. This factor weighs in Zenergy's favor.

iii.   Plaintiff's interest in convenient and effective relief

"The third step in our reasonableness inquiry hinges on whether the plaintiff may receive convenient and effective relief in another forum." OMI, 149 F.3d at 1097. Zenergy does not argue that it could not obtain relief in another forum. Dkt. # 18, at 22. Therefore, this factor weighs in defendants' favor.

iv.    Interstate judicial system's interest in obtaining efficient resolution of the dispute

"The fourth factor in our reasonableness inquiry examines whether the forum state is the most efficient place to litigate the dispute. Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." OMI, 149 F.3d at 1097 (citations omitted). Defendants argue that potential witnesses are located in Colorado and North Dakota, and

18

that Colorado law "may apply." Dkt. # 10, at 13-14.  Zenergy responds that "the Northern District [of Oklahoma] is already deciding significant issues relating to the parties to the [North Dakota project]." Dkt. # 18, at 23.  Zenergy also assumes that Oklahoma law applies to this dispute.  Dkt. # 18, at 25.  This factor does not weigh in favor of either party.  Zenergy has not shown that Oklahoma is the most efficient place to litigate this dispute, but defendants have not shown that Oklahoma is particularly inconvenient, or that another forum would be more convenient.

v.      States' interest in furthering fundamental substantive social policies

Analysis of this factor "focuses on whether the exercise of personal jurisdiction by [Oklahoma] affects the substantive social policy interests of other states or foreign nations." OMI, 149 F.3d at 1097.  Defendants argue that Colorado "has an interest in ensuring that its residents receive adequate and appropriate legal protections . . . ." Dkt. # 10, at 14.  Defendants do not provide evidence that they would receive inadequate or inappropriate protections in this Court. Further, defendants have "not demonstrated how [Colorado's] acknowledged interest might possibly render jurisdiction in [Oklahoma] *unconstitutional*." Burger King, 471 U.S. at 483 (emphasis in original).  Moreover, any potential conflict between Oklahoma and Colorado's substantive policy interests can be accommodated through application of Oklahoma's choice-of-law rules in this case. See id. at 484 ("minimum-contacts analysis presupposes that two or more States may be interested in the outcome of a dispute, and the process of resolving potentially conflicting 'fundamental substantive social policies,' . . . can usually be accommodated through choice-of-law rules rather than through outright preclusion of jurisdiction in one forum").  This factor does not weigh in defendants' favor.

The Court finds that defendants have sufficient minimum contacts with Oklahoma that the exercise of specific personal jurisdiction in this case comports with due process.  Because the Court finds that it has specific jurisdiction over defendants, it need not address the parties' arguments regarding general jurisdiction.

C.    Common Interest Privilege

Generally, to state a claim for defamation a plaintiff must allege:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

RESTATEMENT (SECOND) OF TORTS § 558 (2009).  Defendants argue that Zenergy fails to state claims for defamation because their transmission of the Letter is protected by the common interest privilege.  They argue that sending allegedly defamatory statements to parties that share a common interest in the matter cannot constitute "publication" under Oklahoma or Colorado law.  They argue that the common interest privilege applies in this case because "Zavanna's president sent the allegedly defamatory letter only to Zenergy and representatives of the North Dakota oil and gas wells."  Dkt. # 10, at 17.  Even assuming this is true, Zenergy's defamation claims survive a motion to dismiss.  Zenergy alleges that the Letter was republished by some of the recipients, and that this republication was reasonably foreseeable at the time Coleman published the Letter.  Dkt. # 2, at 2.  Taken as true, this fact could extinguish any privilege to which defendants might be entitled.

Further, the common interest privilege is lost if the publisher recklessly disregarded or knew of the falsity of the defamatory matter. RESTATEMENT (SECOND) OF TORTS § 596 cmt. a (2009). Zenergy alleges that Coleman's conduct was "reckless, intentional, and/or malicious." Dkt. # 2, at 2. Taken as true, this is sufficient to overcome the conditional privilege asserted by defendants. See Thompson v. Pub. Serv. Co. of Colo., 800 P.2d 1299, 1306 (noting that knowledge of or reckless disregard for falsity of allegedly defamatory statement would overcome a qualified privilege); Guinn v. Church of Christ, 775 P.2d 766, 784 (Okla. 1989) (citing § 596 of the Restatement when discussing qualified privilege). Therefore, Zenergy's complaint states claims for defamation against defendants.

**IT IS THEREFORE ORDERED** that Defendant Zavanna, LLC's Motion to Dismiss and Brief in Support (Dkt. # 10) and Defendant William L. Coleman's Motion to Dismiss and Brief in Support (Dkt. # 21) are **denied**.

**DATED** this 26th day of October, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

21